Booth, J.,
delivered the opinion of the court:
Claimant, Philip Leach, a surgeon in the United States Navy, while on duty on board the U. S. S. Yosemite at Agana, Guam, and without being detached therefrom was detailed by order dated January 26, 1900, for special duty on shore at the above station. He continued in this service until August 27, 1900, when special order of June 11, 1900, reached him, detaching him from duty on board the Yosemite and detailing him for duty on board the U. S. S. Oregon. This suit is brought to recover the pay of an army officer with 10 per cent increase thereon for shore duty beyond seas, the contention being that claimant’s service on shore as above set forth was shore duty beyond seas, and that by virtue of the acts of March 3, 1899 (30 Stat. L., 1007), and May 26, 1900 (31 Stat. L., 211), assimilates his pay to that of an army officer performing similar service, with 10 per cent increase thereon from and after the passage of the latter act.
The Supreme Court in deciding the case of United States v. Engard (196 U. S., 515) said:
“ * * * the conceded principle that where an officer is assigned to a duty which is essentially a sea service that *135 he does not lose his right to sea pay whenever he is called upon to perforin a mere temporary service ashore. In the present case it can not be denied that the officer was assigned to sea duty and that the order of the department, instead of detaching him therefrom, simply ordered him to discharge a temporary service ashore in addition to his sea service.”
An analysis of the decisions affecting the issue presented, predicated upon the Engard case and the case of Irwin v. United States (38 C. Cls., 87), leaves the question of shore duty service by a naval officer open in a measure to the nature of the duties performed while ashore. In other words, when the detailed officer is not called upon to perform services ashore “ incompatible with the performance of the officer’s duty on the ship,” if they are merely temporary in extent, and not so different in character as to detach him from his vessel and preclude- their being a part of the officer’s sea service, his paramount duty is sea service.
The question then, in. the first instance, is one of fact. In Symond's case (120 U. S., 46) it was held that the Secretary of the Navy could not change the character' of service performed by a naval officer from sea service to shore service by executive order in the face of legislation directing what shall constitute sea service. In the case at bar, the record from which the findings are made does not enlighten the court upon the character of services performed by the claimant, under his detail, while ashore. True, the order designates the performance of a special duty ashore; whether, however, that special duty was only in conjunction with and additional to the claimant’s sea duty, does not appear. Whether the vessel to which claimant was attached continued to lie at anchor in the port of Agana, whether the claimant messed thereon and continued to discharge the duties of surgeon to its crew, in general, what he did or did not do, is left to be determined by the court from a record reciting simply the orders received by the claimant from the Navy Department during the period covered by this controversy.
In the Engard case (supra) the Government urged the defense that inasmuch as the service of the claimant was ashore it became necessarily incompatible with his sea service *136 by operation of law. The court, in overruling this contention, said:
“ There is no finding in the record, however, which justifies this argument, and as urged at bar it rests upon the mere assumption of the incompatibility between the sea duty to which the officer was regularly assigned and the temporary shore duty which he was called upon by the department to discharge. In effect, the proposition is that it must be assumed as a matter of law, in the absence of a finding to that effect, that the temporary shore duty was of such a permanent character as to render it impossible for the officer to continue to perform duty under his permanent sea assignment, and, therefore, as a matter of law caused such assignment to terminate. We think the converse is true, and that where the assignment of an officer to duty by the Navy Department expressly imposed upon him the continued discharge of his sea duties and qualified the shore duty as merely temporary and ancillary to the regular sea duty, that the presumption is that the shore duty was temporary and did not operate to interfere with or discharge the officer from the responsibilities of his sea duty to which he was regularly assigned.”
While it is true that the orders received by the claimant in the Engard case were specific and definite, it is equally true that the order of January 27, 1900, under which claimant herein contends for the higher pay of shore duty beyond the seas, did not contemplate a detachment from his vessel to perform said service. If so, there was no necessity for the order of June 11, 1900, which did in terms detach the claimant from further service aboard the Tosemite. Chief Engineer Engard was contending for sea pay while his duties were performed ashore; the claimant herein is contending for shore pay for shore duty beyond seas while still attached to a vessel at sea without showing by order or otherwise what was the nature and character of the service he performed ashore. In so far as the relative situation of the parties is concerned, this case is the direct converse of the Engard case. This fact, however, does not render inapplicable the reasoning of the court in the Engard case. We think it entirely apposite and warrants the court in indulging herein the same presumptions indulged in the former case.
There is nothing appearing upon the face of the findings from which the court can deduce the conclusion that claimant *137 was engaged during his period of service ashore in the performance of duties of such a changed and permanent character as to make them paramount to his assignment to sea service. The Island of Guam at the time of claimant’s detail for special service was a naval station of the United States and under the control of the Navy Department. A naval officer was acting as governor thereof, its acquisition by the Government had been comparatively recent, and it is fair to presume from all the circumstances attending the period of claimant’s shore duty, in the absence of proof to the contrary, that they were connected with and incident to his naval service.
The case of Richard P. Leary, No. 23211, is not in anywise contrary to this decision. In the Leary case the orders from the Navy Department, upon their face, indicate the nature, extent, and incompatible character of the shore service the claimant was called upon to perform. They are specific and definite, and similar in most respects to the orders issued in the Engard ease.
The petition is dismissed.
Barney, J., was absent on account of illness when this case was tried and took no part in its decision.