[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-14775

_____

D.C. Docket No. 1:15-cv-22207-KMM

ROBERT M. ALBERTS,

Plaintiff-Appellant,

versus

ROYAL CARIBBEAN CRUISES, LTD.,
a Liberian Corporation,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(August 23, 2016)

Before WILLIAM PRYOR and JILL PRYOR, Circuit Judges, and VOORHEES,[*]
District Judge.

WILLIAM PRYOR, Circuit Judge:

_____

[*] Honorable Richard L. Voorhees, United States District Judge for the Western District of North
Carolina, sitting by designation.

This appeal presents an issue of first impression: whether a seaman's work in international waters on a cruise ship that calls on foreign ports constitutes "performance . . . abroad" under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, 9 U.S.C. § 202. Robert Alberts worked as the lead trumpeter on the *Oasis of the Seas*, a passenger cruise ship that sailed from Florida to several foreign ports in the Caribbean. Alberts sued his employer, Royal Caribbean, under general maritime law and the Jones Act. Royal Caribbean moved to compel arbitration of their dispute. The Convention makes enforceable an arbitration agreement between United States citizens if their contractual relationship "envisages performance . . . abroad." *Id.* Because a seaman works abroad when traveling in international waters to or from a foreign state, we affirm the order compelling arbitration of this dispute.

## I. BACKGROUND

Alberts, a United States citizen, worked as a lead trumpeter on the *Oasis of the Seas*, a passenger cruise ship. The *Oasis of the Seas* is a Bahamian flagged vessel with a home port in Fort Lauderdale, Florida. Royal Caribbean, the operator of the vessel, is a Liberian corporation with its principal place of business in Florida. The ship traveled two routes: a western route that touched ports in Haiti, Jamaica, and Mexico, and an eastern route that touched ports in the United States Virgin Islands, the Bahamas, and St. Maarten. It traveled approximately six days a

2

week and stopped once a week in Florida.  Alberts played his trumpet—and hit his high Cs—only while the ship was sailing the high seas.

Alberts signed two employment agreements. The first covered September through November of 2013, and the second covered February through August of 2014. Both agreements contained the same arbitration clause, which required that all disputes "be referred to and resolved exclusively by mandatory binding arbitration pursuant to the United Nations Conventions [*sic*] on the Recognition and Enforcement of Foreign Arbitral Awards."

Alberts became ill while working for Royal Caribbean, and he alleges that Royal Caribbean failed to provide him an adequate medical exam and failed to take his complaints seriously. He sued Royal Caribbean for unseaworthiness, negligence, negligence under the Jones Act, maintenance and cure, and seaman's wages and penalties. Royal Caribbean moved to compel arbitration, and the district court granted the motion.

## II. STANDARD OF REVIEW

We review an order compelling arbitration *de novo*. *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005).

## III. DISCUSSION

In the absence of an affirmative defense, a district court must compel arbitration under the Convention if four jurisdictional requirements are met. First,

3

"there is an agreement in writing within the meaning of the Convention." *Id.* at 1294 n.7. Second, "the agreement provides for arbitration in the territory of a signatory of the Convention." *Id.* Third, "the agreement arises out of a legal relationship . . . which is considered commercial." *Id.* And fourth, "a party to the agreement is not an American," *id*., or the "relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states," 9 U.S.C. § 202. The parties agree that Albert's employment contract satisfies the first three conditions, and Alberts raises no affirmative defenses.

The only issue before us is whether Alberts's contract "envisages performance . . . abroad." *Id*. Alberts argues that the word abroad means "in one or more foreign states" and that because he worked only in international waters, his contract did not envisage performance abroad. Royal Caribbean argues that abroad means anywhere "outside a country," so performance on international waters is performance abroad. But we need not adopt either definition.

We conclude that performance abroad includes a seaman's work traveling to or from a foreign country. When interpreting a statute, "[w]ords are to be understood in their ordinary, everyday meanings." Antonin Scalia & Bryan A. Garner, *Reading Law* 69 (2012). Although "[m]ost common English words have a number of dictionary definitions, one should assume the contextually appropriate

4

ordinary meaning unless there is reason to think otherwise." *Id.* at 70. The Supreme Court defined the word "abroad" in *United States v. Hutchins*, 151 U.S. 542 (1894), in the context of a statute governing travel expenses for naval officers. *Id.* at 544. It held a naval officer who traveled by steamer from San Francisco to New York did not travel abroad because "the question whether travel is abroad or within the United States should be determined by the termini of the journey, rather than by the route actually taken." *Id.* at 544.

The definition of abroad in *Hutchins* is consistent with standard usage in this context. The second edition of the Random House Dictionary of the English Language defines abroad as "[i]n *or to* a foreign country." *Abroad*, *The Random House Dictionary of the English Language* 6 (2d unabr. ed. 1987) (emphasis added). The third edition of Ballentine's Law Dictionary defines abroad as "[b]eyond the seas or out of the country," *Abroad*, *Ballentine's Law Dictionary* 5 (3d ed. 1969), and its definition of traveling abroad cites *Hutchins* and states that an officer is traveling abroad "when he goes to a foreign port . . . or from a foreign port to a home port, yet he is not so traveling when going from one place to another in the United States . . . although it may take him . . . upon the high seas." *Traveling Abroad*, *Ballentine's Law Dictionary* 1296.

Other definitions of abroad are over and under inclusive in this context. The second edition of Merriam Webster's New International Dictionary defines abroad

5

as both "[b]eyond the bounds of a country" and "in foreign countries." *Abroad*, *Webster's New International Dictionary* 8 (2d ed. 1961). The American Heritage Dictionary of the English Language similarly defines it as both "[o]ut of one's own country" and "[i]n a foreign country or countries." *Abroad*, *American Heritage Dictionary of the English Language* 5 (1st ed. 1969). And the revised fourth edition of Black's Law Dictionary defines abroad as, "[i]n English chancery law, beyond the seas." *Abroad*, *Black's Law Dictionary* 21 (4th ed. rev. 1968). And it defines beyond the seas as "outside the United States." *Beyond Sea*, *Black's Law Dictionary* 204.

The parties' definitions are also inconsistent with standard usage in this context. Royal Caribbean's proposed definition—beyond the bounds of a country—might include a voyage from Miami to New Orleans, which an ordinary speaker would not consider to be abroad. And Alberts's proposed definition—in a foreign country—would not include a voyage between two foreign states, something an ordinary speaker would consider to be abroad.

Alberts argues that the next clause in the statute, "or has some other reasonable relation with one or more foreign states," limits the definition of "performance . . . abroad." 9 U.S.C. § 202. He argues that in the light of this succeeding clause, "performance . . . abroad" must have a "reasonable relation

6

with one or more foreign states," and that, in context, abroad means in a foreign state. This argument is only half right.

We agree with Alberts that these clauses must be read together, but under our definition of abroad—in or traveling to or from a foreign state—performance abroad *does* have a reasonable relation with a foreign state. The reasonable-relation clause does not compel Alberts's definition of abroad.

Alberts's contract envisaged performance abroad because he worked on a cruise ship that traveled in international waters to foreign ports. Because his contract envisaged performance abroad, the arbitration clause is enforceable under the Convention.

## IV. CONCLUSION

We **AFFIRM** the order compelling arbitration.